NSK Ltd. and NSK Corp., plaintiffs v. United States, defendant, and Federal-Mogul Corp., Torrington Co., defendant-intervenors

Court No. 92-07-00470

(Dated March 7, 1996)

*Lipstein, Jaffe & Lawson, L.L.P. (Robert A. Lipstein, Matthew P. Jaffe* and *Grace W. Lawson)* for plaintiffs NSK Ltd. and NSK Corporation.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Velta A. Melnbrencis,* Assistant Director, and *Marc E. Montalbine);* of counsel: *Stephen J. Claeys, Thomas H. Fine, Alicia Greenidge, Dean A. Pinkert* and *Mark A. Barnett),* Attorney-Advisors, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

*Frederick L. Ikenson, P.C. (Frederick L. Ikenson, J. Eric Nissley* and *Joseph A Perna, V)* for defendant-intervenor Federal-Mogul Corporation.

*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen, Lane S. Hurewitz, Myron A. Brilliant, Larry Hampel, Patrick J. McDonough* and *Andrew G. Stephens)* for defendant-intervenor The Torrington Company.

### Opinion

Tsoucalas, *Judge:* Plaintiffs contest aspects of the Department of Commerce, International Trade Administration's ("Commerce") redetermination on remand concerning *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews ("Final Results"),* 57 Fed. Reg. 28,360 (June 24, 1992), as amended, *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Sweden, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews ("Amended Final Results"),* 57 Fed. Reg. 59,080 (Dec. 14, 1992).

On August 1, 1995, the Court remanded the Final Results concerning antifriction bearings ("AFBs") and parts thereof manufactured in Japan by NSK Ltd. and distributed by its subsidiary NSK Corporation (collectively "NSK"). *See NSK Ltd. v. United States,* 19 CIT 1013, Slip Op. 95–138 (Aug. 1, 1995). In *NSK,* the Court directed Commerce to further explain its treatment of NSK's sample merchandise and to reconsider NSK's request for a refund, with interest, of the excess in cash deposits collected from NSK as a result of certain clerical errors in the Final Results. *Id.* at 1032, Slip Op. 95–138 at 37.

On December 12, 1995, Commerce submitted its Final Results of Redetermination Pursuant to Court Remand, *NSK Ltd. and NSK Cor-*

*poration v. United States,* Slip Op. 95–138 (August 1, 1995) ("Remand Results").

BACKGROUND

In its brief to the Court, NSK contended that Commerce should include in its margin analysis the small quantities of bearings imported as samples at no charge to prospective U.S. buyers and that Commerce had not sufficiently explained their inclusion. Commerce agreed that a remand was appropriate. In the Remand Results, Commerce explains that NSK failed to demonstrate that it retained exclusive ownership of the subject samples or that the samples were destroyed during the testing process. *Remand Results* at 3. Commerce also states that, although certain sample merchandise has previously been excluded from the margin calculation when the costs of such merchandise was included in the company's U.S. indirect selling (general and administrative) expenses,[1] here, NSK reported only "incidental expenses in delivering and packaging [samples], not the actual cost of the sample itself." *Final Results* at 28,395.[2] Based on the above, Commerce confirmed its finding that NSK's sample merchandise was properly included in the antidumping analysis. *Remand Results* at 3.

The Final Results established NSK's rates for ball bearings and cylindrical roller bearings at 7.22% and 14.34% respectively. 57 Fed. Reg. at 28,361. Based on a finding of clerical errors, the Amended Final Results revised those rates to 4.62% for ball bearings and 12.69% for cylindrical roller bearings. 57 Fed. Reg. at 59,081. NSK contested the denial of a funds request concerning excess cash deposits collected by the United States Customs Service ("Customs") during the period between publication of the Final Results and the Amended Final Results (June 24, 1992—December 14, 1992) due to the clerical errors.

In the Remand Results, Commerce reconsidered NSK's request for a preliquidation refund of excess cash deposits paid due to a clerical error and whether the payment of interest is proper in this case. *Id.* at 5–8. Explaining that its regulations for correction of ministerial errors (19 C.F.R. §§ 353.28 and 355.28 (1992)) "did not establish procedures or threshold criteria addressing pre-liquidation refunds of overpayments of cash deposits due to clerical errors" and it "has not established" such procedures or criteria, Commerce now "agrees to instruct Customs to refund NSK's overpayment of antidumping duties made during the June 24, 1992, through December 13, 1992, period." *Remand Results* at 7–8. With respect to the question of interest, Commerce states that it will instruct Customs to make the refund per its "standard practice,"

---

[1] *See Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Certain Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Review,* 56 Fed. Reg. 26,054, 26,059 (June 6, 1991); *Tapered Roller Bearings, and Parts Thereof, Finished and Unfinished, From Japan; Final Results of Antidumping Duty Administrative Review,* 57 Fed. Reg. 4,960, 4,966 (Feb. 11, 1992).

[2] Commerce cites its longstanding policy which regards a transaction to be a sale if ownership of the merchandise is transferred to the unrelated U.S. purchaser. *Remand Results* at 3–4 (citing *Television Receivers, Monochrome and Color, From Japan; Final Results of Antidumping Duty Administrative Review,* 52 Fed. Reg. 8,940, 8,941 (March 20, 1987); *Color Television Receivers From Korea; Final Results of Antidumping Duty Administrative Review,* 53 Fed. Reg. 24,975, 24,977–78 (July 1, 1988)).

*i.e.,* to "calculate the interest due on any pre-liquidation refund and include that sum in its calculation of amounts owed to or due from the importers *at the time of liquidation* of the subject entries." *Id.* at 8 (emphasis added)..

### DISCUSSION

Commerce's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F. Supp. 1252, 1255 (1988).

NSK contests Commerce's refusal to exclude its imported samples from the U.S. sales database. NSK argues that the samples in question could not be considered sales as there was no receipt of monetary consideration for the merchandise transferred. Pls.' Comments on Remand Results at 2–8.

The Court agrees with Commerce[3] that it would be improper to exclude from its analysis, subject merchandise to a U.S. customer solely because the merchandise was provided free of charge. Such a requirement creates a loophole in the antidumping law allowing the lowest priced U.S. transactions to escape review and threatens the effectiveness of the law. Therefore, the Court sustains Commerce's Remand Results on this issue.

NSK also contests Commerce's refusal to refund the interest accrued on the overpayment in cash deposits at issue prior to liquidation. NSK requests that the Court order Commerce to pay the interest on the excess cash deposits "at the same time that the excess cash deposits are refunded." Pls.' Comments on Remand Results at 8.

The Court's remand instructions were that Commerce consider whether the payment of interest is proper *in this case. NSK,* 19 CIT at 1032, Slip Op. 95–138 at 37. Furthermore, 19 U.S.C. § 1520(a)(4), which contains the statutory authority for the refund of excess duties, is silent with regard to preliquidation payments of interest. Thus, no statutory basis exists that requires the payment of interest contemporaneously with a preliquidation refund. Moreover, the Court finds Commerce's basis for allowing Customs to process the interest payment in accordance with its established procedure to be reasonable in this case. Accordingly, the Remand Results on this issue are sustained.

### CONCLUSION

The Court finds that Commerce has complied with the Court's remand instructions. Accordingly, the Court sustains the Remand Results in their entirety.

---

[3] *See* Remand Results at 9–10.